UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
)
OZ LAVI )
)
 Plaintiff, )
)
 -against- )
)
THE CITY OF NEW YORK; )
RAYMOND W. KELLY, In His Official )
Capacity as Commissioner of the N.Y.P.D.; )
RICHARD TURK, N.Y.P.D Shield No. )
7122, In His Individual and Official Capacity; )
KEVIN SMITH, N.Y.P.D. Shield No. 449, )
In His Individual and Official Capacity; )
JOSEPH DIMICHELE, N.Y.P.D. Shield )
No. 02569, In His Individual and Official )
Capacity; JOHN DOE OFFICERS 1-7 of )
the N.Y.P.D., Each In His Individual and )
Official Capacity )
)
 Defendants. )
)
---------------------------------------------------------------x



05 CV 8007

Judge Berman

**VERIFIED COMPLAINT
AND JURY DEMAND**

RECEIVED
SEP 1 5 2005
U.S.D.C. S.D. N.Y.
CASHIERS

### Introduction

1. Plaintiff brings this action for money damages against Detective Richard Turk ("Turk"), Sergeant Kevin Smith ("Smith"), Detective Joseph Dimichele ("Dimichele"), John Doe Officers 1-7 (collectively, and including Turk, Smith, and Dimichele, the "Officers"), the City of New York ("City"), and Commissioner Raymond Kelly ("Kelly") for compensatory and punitive relief for (1) violations of plaintiff's civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, and (2) violations of New York State law for false arrest, false imprisonment, unconstitutional jail conditions, malicious prosecution, abuse of process, and intentional infliction of emotional distress.

### Jurisdiction

2. Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983, § 1988, and § 2000(d) et seq., and under the First, Fourth, Fifth,

1

Eighth, and Fourteenth Amendments to the United States Constitution, as well as under the laws of the United States.

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343.

4. Plaintiff also brings this action against Defendants to redress the deprivation of rights secured to him under the New York State constitution and New York State law.

5. This Court has supplemental jurisdiction over Plaintiff's state constitutional and state law claims pursuant to 28 U.S.C. §1367, since those claims form part of the same case or controversy as Plaintiff's federal case.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391, since all claims arose in this District.

## Parties

7. Plaintiff Oz Lavi ("Lavi") is a resident of New York County, State of New York.

8. At all times pertinent hereto, the Officers were employed by the New York City Police Department and acting within their scope of employment.

9. Aside from Turk, Smith, and Dimichele, the identities of the Officers are not presently known. The Officers are sued both individually and in their official capacity as New York City Police Officers.

10. Defendant City operates and governs the New York City Police Department pursuant to the laws of the State of New York. The City is therefore responsible for the effective hiring, training, supervision, discipline, retention, and promotion of the agents, servants, and/or employees of the New York City Police Department.

11. Defendant Kelly is the Commissioner of the New York City Police Department. He is therefore responsible for the effective hiring, training, supervision, discipline, retention, and promotion of the agents, servants, and/or employees of the New York City Police Department. Kelly is sued in his official capacity as Commissioner.

## Facts

12. On November 4, 2004 at approximately 6:45 p.m., Lavi arrived at Café Andalucia, located in midtown Manhattan. Lavi's purpose for the visit was to discuss employment opportunities with the owner.

13. Higinio Acosta was employed as a cook at the restaurant and was working at the time of Lavi's visit.

14. At approximately 7:30 p.m., while exiting the restroom at Café Andalucia, Lavi saw two plain-clothed Officers arrest two individuals in the restaurant. Lavi quickly returned to his seat.

15. Moments later, Lavi watched two Officers rush into the kitchen where Acosta was chopping vegetables.

16. Lavi observed one of the Officers grab Acosta from behind, throw him roughly to the ground, and handcuff him.

17. Upon information and belief, Turk is the Officer who threw Acosta to the ground.

18. At the same time that this occurred, Lavi told the Officer who had accompanied Turk that Acosta did not speak English, that he did not understand what was going on, and that Acosta was eighty years old with a heart condition.

19. That officer responded to Lavi by saying something like, "Shut up and go back to your seat."

20. Acosta was then handcuffed and put in a police vehicle.

21. The Officers did not have a warrant or probable cause for Acosta's arrest, nor did they have legal cause or reason to seize him.

22. Three or four Officers then called Lavi into the restaurant's kitchen and ordered him to empty his pockets. They yelled at Lavi, asking rhetorically, "What do you think you are doing?" Then they warned him, "We are going to teach you a lesson."

23. Officers handcuffed Lavi and started to lead him outside.

24. Lavi asked if he could retrieve his jacket, wallet, cell phone, and other belongings from the restaurant. The Officers denied his request, and walked Lavi, handcuffed, outside in the pouring rain.

25. Lavi was wearing only a cotton shirt and jeans. The weather was rainy and chilly.

26. Officers did not have a warrant or probable cause for Lavi's arrest, nor did they have legal cause or reason to seize him.

27. Wet, handcuffed, and cold, Lavi sat in a police car parked outside Café Andalucia.

28. The Officers left the vehicle's entry door open, allowing rain and cold air to blow into the car continuously.

29. There were other arrested individuals sitting with Lavi in the car, including Acosta.

30. Some of these individuals asked the Officers to close the vehicle's entry door.

31. The Officers ignored these requests as rain and cold air continued to blow inside.

32. Shivering, Lavi asked the Officers for his jacket two more times.

33. The Officers brushed aside his request both times.

34. Acosta, seated next to Lavi in the car, began coughing up blood.

35. Lavi alerted the Officers to Acosta's condition.

36. The Officers called an ambulance, and, upon information and belief, Acosta was taken to the hospital.

37. Approximately one hour after first being placed in the police car, Lavi was taken to jail.

38. Lavi spent the night in a very cold, small cell with approximately fourteen other people and only five bench seats.

39. Lavi spent the entire night standing in his wet clothes.

40. Even after one Officer said that there were too many people in the cell, other Officers continued to bring new prisoners to the cell.

41. The Officers repeatedly denied Lavi access to the restroom.

4

42. Eventually, an Officer granted Lavi permission to use the toilet, but he demanded that Lavi keep the bathroom door open to the entire jail while he used the facilities.

43. Lavi was told that if he did not like the Officers' treatment of him, he could "go back to your own country."

44. Lavi was born in Israel.

45. When Lavi was granted phone access to call his family, one of the Officers told him he was not allowed to speak in his native language (Hebrew) and demanded that he speak in English.

46. Lavi was again told that if he did not like his treatment, he could go back to Israel.

47. Lavi was charged with Obstruction of Governmental Administration in the Second Degree pursuant to PL 195.05, a Class A misdemeanor.

48. The misdemeanor charge was drafted by Dimichele and included references to witness accounts by Turk and Smith.

49. At Lavi's arraignment, the district attorney's office argued that Lavi's alleged obstruction involved the use of a dangerous weapon.

50. The "dangerous weapon" referenced by the district attorney was actually the kitchen knife Acosta – a cook – had been using to cut vegetables when the Officers stormed the kitchen.

51. Lavi was not in the kitchen when he cautioned the Officers about Acosta's poor health.

52. Lavi never held the kitchen knife.

53. Lavi never physically impeded the Officers from approaching or arresting Acosta.

54. Upon information and belief, although Lavi was arrested and charged, not one of the Officers provided an affidavit or other documentation following Lavi's arraignment to support the charge against him.

55. Consequently, the court dismissed the case against Lavi on February 9, 2005.

56. At all relevant times, the Officers were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their office to one another.

57. Due to the treatment he endured by the Officers and the resulting court proceedings, Lavi suffered extreme emotional distress.

58. As a direct and proximate result of the Officers' acts, Lavi suffered a violation of his civil rights, including loss of physical liberty, physical pain and suffering, degradation, humiliation, loss of reputation and esteem, and various other physical and emotional injuries.

59. Lavi also suffered economic loss stemming from the cost of legal services to defend himself against the obstruction charge.

### Count One: Violation of Constitutional Rights under § 1983 by Officers

60. Lavi reasserts and re-alleges the facts stated above as if fully stated herein.

61. Acting "under color of law," the Officers violated Lavi's civil rights by arresting him without a warrant or probable cause.

62. The Officers further violated Lavi's civil rights by placing him in jail overnight in unconstitutional conditions.

63. In violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, the Officers deprived Lavi of his right to free speech, his right to be free from deprivation of liberty and privacy without due process of law, his right to be free from cruel and unusual punishment, and his right to be free from discrimination based on national origin.

64. Officers intended to deprive Lavi of his rights, acting with actual malice toward Lavi and with reckless disregard for and deliberate indifference to his statutory and constitutional rights.

65. As a direct and proximate result of the acts of the Officers, Lavi suffered psychological and economic injuries, endured great pain and mental suffering, and was deprived of his physical liberties.

### Count Two: Violation of Constitutional Rights under § 1983 by Kelly and City

66. Lavi reasserts and re-alleges the facts stated above as if fully stated herein.

67. Prior to November 4, 2004, Kelly and the City, through the New York Police Department, permitted and tolerated a pattern and practice by police officers of unreasonable use of force, punishment, and deliberate indifference to Constitutional guarantees and the laws of the United States while making arrests.

68. Prior to November 4, 2004, it was the policy and/or custom of Kelly and the City to investigate citizen complaints of police misconduct inadequately and improperly;

69. Prior to November 4, 2004, it was the policy and/or custom of Kelly and the City to tolerate misconduct by police officers.

70. Prior to November 4, 2004, it was the policy and/or custom of Kelly and the City to supervise police officers inadequately, including the Defendant Officers, thereby failing to discourage adequately further constitutional violations by the City's police officers.

71. Prior to November 4, 2004, Kelly and the City did not require appropriate in-service training or re-training of police officers who were known to have engaged in police misconduct.

72. As a result of the polices and customs described herein, the City's police officers, including the Defendant Officers, believed that their actions would not be properly monitored by supervising officers and that misconduct would not be investigated or sanctioned, but would be tolerated.

73. The policies and customs described herein demonstrate a deliberate indifference on the part of Kelly and the City's policymakers to the constitutional rights of persons within the City, and were the cause of the violations of Lavi's rights alleged herein.

74. As a direct and proximate result of the City's and Kelly's policy of permitting and tolerating said practices, Lavi's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution and his rights under 42 U.S.C. 1983 were violated.

75. The City and Kelly are responsible for these violations, and are thus liable to Lavi for damages.

### Count Three: False Arrest and False Imprisonment

76. Lavi reasserts and re-alleges the facts stated above as if fully stated herein.

77. Lavi, while lawfully in New York City, was arrested without just cause, probable cause, provocation, or any valid reason by the Officers, and was further detained for approximately twenty-four hours.

78. The Officers were acting within their scope of employment and "under color of law" as agents, servants, and/or employees of the New York City Police Department, and thus under authorization of Kelly and the City.

79. As a result of his false arrest and false imprisonment, Lavi suffered emotional, psychological, and pecuniary damages.

80. The Officers, Kelly, and City are liable for said damages and injuries suffered by Lavi resulting from the false arrest and false imprisonment.

### Count Four: Abuse of Process and Malicious Prosecution

81. Lavi reasserts and re-alleges the facts stated above as if fully stated herein.

82. By instigating, ordering, validating, procuring, and assisting in Lavi's arrest, the Officers, who acted within the scope of their employment and "under color of law" on behalf of their employer, maliciously prosecuted Lavi without reasonable or probable cause and with full knowledge that the charges were false.

83. The Officers used the criminal process against Lavi in order to intimidate him and maliciously prosecute him for a crime that never existed and was in fact dismissed by the court.

84. As a proximate result of this abuse of process and malicious prosecution, Lavi was compelled to hire an attorney and appear in court. As a result, he suffered economic, psychological, and emotional damages.

85. The Officers, Kelly, and City are liable for said damages resulting from the abuse of process and malicious prosecution against Lavi.

### Count Five: Intentional Infliction of Emotional Distress

86. Lavi reasserts and re-alleges the facts stated above as if fully stated herein.

87. The Officers, who acted within the scope of their employment and "under color of law" on behalf of their employer, intentionally and recklessly engaged in extreme and outrageous conduct.

88. This conduct caused Lavi to suffer mental and emotional distress.

89. The Officers, Kelly, and the City are liable to Lavi for mental and emotional distress.

## Prayer for Relief

90. Wherefore, Lavi prays that this Court:

   A. Enter a judgment that, by their actions, each of the Defendants violated Plaintiff's rights under (i) the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, (ii) 42 U.S.C. § 1983, (iii) 42 U.S.C. § 1988, (iv), 42 U.S.C. § 2000(d) et seq., (v) the New York State constitution, and (vi) New York State law; and

   B. Enter a judgment, jointly and severally, against the Defendants for compensatory damages in favor of Plaintiff in the amount of $500,000; and

   C. Enter a judgment, jointly and severally against each of the Defendants for punitive damages in the amount of $1,000,000; and

   D. Award costs of this action, including reasonable attorney's fees and litigation expenses, to Plaintiff pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988, and New York State law; and

   E. Grant such other and further relief as the Court may deem appropriate.

## Demand for a Jury Trial

91. Lavi hereby demands a trial by jury.

DATED: New York, New York
September 14, 2005

Respectfully submitted,

By _____
Michael C. Rakower  (MR-2914)

Law Office of Michael C. Rakower
450 Lexington Avenue, 17th Floor
New York, New York  10017
(212) 350-2713

*Attorney for the Plaintiff*

**Plaintiff's Verification**

STATE OF NEW YORK)
COUNTY OF NEW YORK) SS:

Oz Lavi, being duly sworn, states:

> I am a plaintiff in this action. I have read the foregoing complaint and it is true to my knowledge, except as to matters stated to be alleged on information and belief. As to those matters, I believe the foregoing complaint to be true.

September 14, 2005

_____
Oz Lavi

Sworn to and Subscribed before me this 14 day of September, 2005.

_____
NOTARY PUBLIC

REIKO CYR
Notary Public, State of New York
No. 02CY6103235
Qualified in New York County
Commission Expires 12/22/2007