UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
_____x
                                        )
OZ LAVI                                 )
                                        )
                      Plaintiff,        )
                                        )
        -against-                       )
                                        )
THE CITY OF NEW YORK;                   )      AMENDED COMPLAINT
RAYMOND W. KELLY, In His Official       )      AND JURY DEMAND
Capacity as Commissioner of the N.Y.P.D.; )
RICHARD TURK, N.Y.P.D Shield No.        )
7122, In His Individual and Official Capacity; )
KEVIN SMITH, N.Y.P.D. Shield No. 449,   )
In His Individual and Official Capacity; )
JOSEPH DIMICHELE, N.Y.P.D. Shield       )
No. 02569, In His Individual and Official )
Capacity; JOHN DOE OFFICERS 1-7 of      )
the N.Y.P.D., Each In His Individual and )
Official Capacity                       )
                                        )
                      Defendants.       )
                                        )
_____x
```

Plaintiff, Oz Lavi, for his complaint against Defendants, Richard Turk, Kevin Smith, Joseph DiMichele, John Doe Officers 1-7 (collectively, and including Defendants Turk, Smith, and DiMichele, the "Officers"), the City of New York, and Raymond W. Kelly, alleges on knowledge with respect to himself and his own conduct, and upon the basis of information and belief as to all other matters:

### Introduction

1.     Plaintiff Lavi, a former Israeli combat fighter and military command instructor, was falsely arrested on November 4, 2004 for "Obstruction of Governmental Administration in the Second Degree" (Penal Law 195.05), a misdemeanor, after he acted as a good Samaritan by

attempting to save the life of Higinio Acosta, a partially deaf, 79 year-old immigrant with a

serious heart condition who did not speak English.

2.     When Plaintiff Lavi observed Defendant Turk, a detective in the Manhattan South

Narcotics division of the New York City Police Department, approach Acosta from the back,

wrestle Acosta to the ground, repeatedly smash one of Acosta's hands on the ground, and drive

his knees into Acosta's back, Plaintiff Lavi attempted to inform Defendant Smith, a sergeant in

Manhattan Narcotics South who was standing guard, that Acosta was a frail old man with a bad

heart who did not speak English and did not understand that the man who grabbed him from

behind, Defendant Turk, was a police officer.

3.     For this kind-hearted act, Defendant Officers told Plaintiff Lavi that "We are

going to teach you a lesson."  Defendant Officers then arrested Plaintiff Lavi and intentionally

and vindictively subjected him to a variety of humiliating and terrifying forms of abuse while he

languished in jail for an approximately 24-hour period.  Despite the fact that Plaintiff Lavi was

arrested on a petty misdemeanor charge -- which was subsequently dismissed -- Defendant

Officers forced Plaintiff Lavi to undergo a strip search, whereupon he was required to disrobe

and expose his genitals, and a body cavity search, whereupon he was required to expose his

buttocks and squat, as if sitting in a chair, so that the police could determine whether Plaintiff

Lavi was hiding contraband in his anus.  ("Strip search" and "body cavity search" are hereinafter

collectively referred to as "strip search").

4.     On May 12, 2004, the Civilian Complaint Review Board (the "CCRB") issued a

letter to Defendant Kelly describing numerous instances it had investigated in which New York

City Police Department ("N.Y.P.D.") officers conducted strip searches in violation of the

N.Y.P.D.'s procedures.  The letter recommended that the N.Y.P.D. enhance its training of

2

officers to ensure adherence to Patrol Guide strip search procedures. The CCRB wrote the letter after it learned of and investigated a markedly high rate of substantiated allegations by individuals complaining of impermissible strip searches.

5.      On May 13, 2004, the N.Y.P.D. issued a directive that was read ten times at every roll call and posted in every command describing proper strip search procedures. Among other things, the directive stated:

> A strip search will be authorized by a supervisor only when an arresting officer has articulated a reasonable suspicion, beyond probable cause for the arrest, that the individual is concealing contraband or a weapon.

6.      Defendant DiMichele arrested Plaintiff Lavi at Café Andalucia, a restaurant and bar located in midtown Manhattan, at approximately 7:30 p.m. on November 4, 2004. Approximately eight other individuals were arrested at Café Andalucia on November 4, 2004 at approximately 7:30 p.m. Upon information and belief, Defendant Smith was Defendant DiMichele's direct supervisor when Defendant DiMichele arrested Plaintiff Lavi and others at Café Andalucia.

7.      Upon information and belief, Plaintiff Lavi was not the only individual arrested at Café Andalucia and subsequently illegally strip searched. Upon information and belief, Defendant Smith was the supervising officer on duty at the 10th Precinct when Plaintiff Lavi and others at Café Andalucia were taken there and strip searched.

8.      The CCRB's letter recommended that the New York City Police Department teach strip search procedures in classes to cadets and newly promoted sergeants, lieutenants, and captains and that the N.Y.P.D. conduct in-service training of its officers. The CCRB letter particularly recommended in-service training for supervisors and officers assigned to narcotics units. Defendants Smith, DiMichele, and Turk and certain of Defendant Officers are members of the Manhattan South Narcotics division of the N.Y.P.D.

9.     According to the CCRB letter, the New York City Police Department had acknowledged that additional training concerning strip search procedures was warranted and that the N.Y.P.D. had been preparing a training video concerning strip search procedures for several months. Upon information and belief, such a training video has not yet been distributed for review.

10.     Plaintiff Lavi brings this action for money damages against Defendant Officers, each in his individual and official capacity, Defendant City of New York, and Defendant Kelly, in his official capacity, for compensatory and punitive relief for (1) violations of Plaintiff Lavi's civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, and (2) violations of New York State law for false arrest, false imprisonment, unconstitutional jail conditions, illegal strip search, malicious prosecution, abuse of process, and intentional infliction of emotional distress.

**Jurisdiction**

11.     Plaintiff Lavi brings this action against Defendants pursuant to 42 U.S.C. § 1983, § 1988, and § 2000(d) et seq., and under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as under the laws of the United States. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and § 1343. This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, since Plaintiff Lavi is a citizen of a foreign state (Israel), the Defendants are citizens of New York, and the matter in controversy exceeds $75,000.

12.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391, since all claims arose in this District.

**Pendent Jurisdiction**

13.     Plaintiff Lavi also brings this action against Defendants to redress the deprivation

of rights secured to him under the New York State constitution and New York State law.  This

Court has supplemental jurisdiction over Plaintiff Lavi's state constitutional and state law claims

pursuant to 28 U.S.C. §1367, since those claims form part of the same case or controversy as

Plaintiff Lavi's federal case.

14.     On May 9, 2005, within ninety days of the disposition of the criminal action filed

against him, Plaintiff Lavi served a notarized Notice of Claim against Defendant City of New

York upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

15.     At least thirty days have elapsed since the service of the Notice of Claim, and

adjustment or payment of the claims has been neglected or refused by Defendant City of New

York.

16.     This action, initially filed on September 15, 2005, was commenced within one

year and ninety days after the arrest of Plaintiff Lavi and the disposition of the criminal action

brought against him.

**Parties**

17.     Plaintiff Lavi is a resident of New York County, State of New York.

18.     At all times pertinent hereto, the Defendant Officers were employed by the New

York City Police Department and acting within their scope of employment and "under color of

law" as agents, servants, and/or employees of the N.Y.P.D., and thus under authorization of

Defendants Kelly and City of New York.

19.     Aside from Defendants Turk, Smith, and Dimichele, the identities of the

Defendant Officers are not presently known.  The Defendant Officers are sued both individually

and in their official capacity as N.Y.P.D. officers.  Defendant Officers are composed of certain

officers affiliated with Manhattan South Narcotics and certain officers affiliated with Manhattan's 10th Precinct.

20.     Defendant City of New York operates and governs the New York City Police Department pursuant to the laws of the State of New York. Defendant City of New York is therefore responsible for the effective hiring, training, supervision, discipline, retention, and promotion of the agents, servants, and/or employees of the N.Y.P.D.

21.     Defendant Kelly is the Commissioner of the New York City Police Department. He is therefore responsible for the effective hiring, training, supervision, discipline, retention, and promotion of the agents, servants, and/or employees of the N.Y.P.D. Defendant Kelly is sued in his official capacity as Commissioner.

**Facts**

22.     On November 4, 2004 at approximately 6:45 p.m., Plaintiff Lavi arrived at Café Andalucia. Plaintiff Lavi's purpose for the visit was to discuss a business venture with the owner.

23.     Higinio Acosta, now deceased, served as a cook at the restaurant and was preparing food in the kitchen at the time of Lavi's visit. Higinio Acosta was a 79 year-old immigrant with a serious heart condition. He did not speak English and was partially deaf. He was approximately 5'3" tall and weighed approximately 130 pounds. He was of slight build, frail, and infirm.

24.     At approximately 7:30 p.m., while exiting the restroom at Café Andalucia, Plaintiff Lavi saw two plain-clothed Defendant Officers arrest two individuals in the restaurant. Plaintiff Lavi quickly returned to his seat.

25.     Moments later, Plaintiff Lavi watched Defendants Turk and Smith rush into the kitchen where Acosta was cutting food.  Upon information and belief, each of these two Defendant Officers is more than six feet tall and weighs well in excess of 200 pounds.

26.     Plaintiff Lavi observed Defendant Turk grab Acosta from behind, shake him fiercely, violently twist one of his arms behind his back, throw him roughly to the ground, smash his hand repeatedly against the floor, and drive Defendant Turk's knees into Acosta's back.

27.     At the same time that this occurred, Plaintiff Lavi told Defendant Smith that Acosta did not speak English, that he did not understand what was happening, and that Acosta was approximately 80 years old with a heart condition.

28.     Defendant Smith responded to Plaintiff Lavi by saying something like, "Shut up and go back to your seat," while giving Plaintiff Lavi a slight push toward his stool at the bar.

29.     Acosta was then handcuffed and put in a police vehicle.  Defendant Officers did not have a warrant or probable cause for Acosta's arrest, nor did they have legal cause or reason to seize him.

30.     The Defendant Officers arrested at least three more individuals and searched, but did not arrest, a fourth individual before three or four Defendant Officers called Plaintiff Lavi into Café Andalucia's kitchen and ordered him to empty his pockets.

31.     By this time, at least approximately five minutes had elapsed since Plaintiff Lavi had approached Defendant Smith to inform him of Acosta's weak and vulnerable condition.

32.     When Plaintiff Lavi entered the kitchen pursuant to the request of certain Defendant Officers, those Defendant Officers yelled at Plaintiff Lavi, asking rhetorically, "What do you think you are doing?"  Then they warned him, "We are going to teach you a lesson."

33.     Defendant Officers handcuffed Plaintiff Lavi and led him outside.