34. Plaintiff Lavi asked if he could retrieve his jacket, cell phone, and other belongings from the restaurant. Defendant Officers denied his request and walked Plaintiff Lavi, handcuffed, outside in the pouring rain.

35. Plaintiff Lavi was wearing only a cotton shirt and jeans. The shirt had three-quarter length sleeves. The weather was rainy and chilly.

36. Defendant Officers did not have a warrant or probable cause for Plaintiff Lavi's arrest, nor did they have legal cause or reason to seize him.

37. Wet, handcuffed, and cold, Plaintiff Lavi sat in a police car parked outside Café Andalucia.

38. Defendant Officers left the vehicle's entry door open, allowing rain and cold air to blow into the car continuously.

39. There were other arrested individuals sitting with Plaintiff Lavi in the car, including Acosta.

40. Some of these individuals asked Defendant Officers to close the vehicle's entry door.

41. Defendant Officers ignored these requests as rain and cold air continued to blow inside.

42. Shivering, Plaintiff Lavi asked Defendant Officers for his jacket two more times.

43. Defendant Officers brushed aside his request both times.

44. Acosta, seated next to Plaintiff Lavi in the car, began coughing up blood.

45. Plaintiff Lavi alerted Defendant Officers to Acosta's condition.

46. Defendant Officers called an ambulance, and, upon information and belief, Acosta was taken to the hospital.

47. Approximately one hour after first being placed in the police car, Plaintiff Lavi was taken to jail.

48. Plaintiff Lavi spent the night in a very cold, small cell with at least approximately twelve other people and only five bench seats.

49. Plaintiff Lavi was put in jail with wet clothes and spent nearly the entire night standing. When he was not standing, Plaintiff Lavi sat on the floor.

50. Sometime during his time in jail, Plaintiff Lavi was subjected to a humiliating and degrading strip search in which he was required to expose his genitals and his anus, purportedly so that the police could determine whether he was concealing contraband or a weapon.

51. Even after one Defendant Officer said that there were too many people in the cell, other Defendant Officers continued to bring new prisoners to the cell.

52. Defendant Officers repeatedly denied Plaintiff Lavi access to the restroom.

53. Eventually, one Defendant Officer granted Plaintiff Lavi permission to use the toilet, but he demanded that Plaintiff Lavi keep the restroom door open to the police precinct while he urinated. A room full of male and female officers and arrested individuals could observe Plaintiff Lavi urinating.

54. Plaintiff Lavi was told that if he did not like Defendant Officers' treatment of him, he could "go back to your own country."

55. Plaintiff Lavi was born in Israel.

56. When Plaintiff Lavi was granted telephone access to call his family, one of the Defendant Officers interrupted Plaintiff Lavi during his telephone call and ordered him to stop speaking in his native language (Hebrew). The Defendant Officer demanded that Plaintiff Lavi speak in English. Even after Plaintiff Lavi spoke English on the telephone, the Defendant

Officer continued to verbally harass Plaintiff Lavi about his birth country and his native language. As a result, Plaintiff Lavi felt intimidated and ended his telephone call abruptly.

57. Plaintiff Lavi was charged with Obstruction of Governmental Administration in the Second Degree pursuant to PL 195.05, a Class A misdemeanor.

58. The misdemeanor charge was drafted by Defendant Dimichele and included a witness account by Defendant Turk concerning the conduct of Acosta and a witness account by Defendant Smith concerning the conduct of Plaintiff Lavi.

59. At Plaintiff Lavi's arraignment, the Manhattan District Attorney's office argued that Plaintiff Lavi's alleged obstruction involved the use of a dangerous weapon.

60. The "dangerous weapon" referenced by the assistant district attorney was actually the kitchen knife Acosta – a cook – had been using to cut vegetables when Defendant Turk stormed the kitchen and assaulted him.

61. Plaintiff Lavi was not in the kitchen when he cautioned Defendant Smith about Acosta's poor health.

62. Plaintiff Lavi never held the kitchen knife.

63. Plaintiff Lavi never physically impeded Defendant Officers from approaching or arresting Acosta.

64. During the assault and arrest of Acosta, Plaintiff Lavi did not touch Acosta or Defendants Turk or Smith.

65. Upon information and belief, although Plaintiff Lavi was arrested and charged with a crime, not one of the Defendant Officers provided an affidavit or other documentation following Plaintiff Lavi's arraignment to support the charge against him.

66. Consequently, the court dismissed the case against Plaintiff Lavi on February 9, 2005.

67. At all relevant times, Defendant Officers were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their office to one another.

68. Due to the treatment he endured by Defendant Officers and the resulting court proceedings, Plaintiff Lavi suffered extreme emotional distress.

69. As a direct and proximate result of Defendant Officers' acts, Plaintiff Lavi suffered a violation of his civil rights, including loss of physical liberty, physical suffering, degradation, humiliation, loss of reputation and esteem, and various other physical and emotional injuries.

70. Plaintiff Lavi also suffered economic loss stemming from the cost of legal services to defend himself against the obstruction charge.

### Count One: Violation of Constitutional Rights under § 1983 and the New York State Constitution by Defendant Officers

71. Defendant Officers violated Plaintiff Lavi's civil rights by arresting him without a warrant or probable cause. Defendant Officers further violated Plaintiff Lavi's civil rights by placing him in jail overnight in unconstitutional conditions and subjecting him to a variety of humiliating and degrading acts, including an illegal strip search and an illegal body cavity search.

72. In violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and the New York State Constitution, Defendant Officers deprived Plaintiff Lavi of his right to free speech, his right to be free from

deprivation of liberty and privacy without due process of law, his right to be free from cruel and unusual punishment, and his right to be free from discrimination based on national origin.

73. Defendant Officers intended to deprive Plaintiff Lavi of his rights, acting with actual malice toward Plaintiff Lavi and with reckless disregard for and deliberate indifference to his statutory and constitutional rights.

74. As a direct and proximate result of the acts of Defendant Officers, Plaintiff Lavi suffered psychological and economic injuries, endured physical and mental suffering, and was deprived of his physical liberties.

### Count Two: Violation of Constitutional Rights under § 1983 by Defendants Kelly and City

75. Prior to November 4, 2004, Defendants Kelly and City of New York, through the New York Police Department, permitted and tolerated a pattern and practice by police officers of illegal strip searches, illegal body cavity searches, unreasonable punishment, and deliberate indifference to Constitutional guarantees and the laws of the United States while making arrests.

76. Prior to November 4, 2004, it was the policy and/or custom of Defendants Kelly and City of New York to investigate citizen complaints of police misconduct inadequately and improperly.

77. Prior to November 4, 2004, it was the policy and/or custom of Defendants Kelly and City of New York to tolerate misconduct, including illegal strip searches and body cavity searches by police officers, especially by officers working in narcotics units.

78. Prior to November 4, 2004, it was the policy and/or custom of Kelly and City of New York to supervise police officers inadequately, including Defendant Officers, thereby failing to discourage adequately further constitutional violations by the City's police officers.

79. Prior to November 4, 2004, Defendants Kelly and City of New York did not require appropriate in-service training or re-training of police officers, especially those working in narcotics units, who were known to have engaged in police misconduct, including illegal strip searches and illegal body cavity searches.

80. As a result of the policies and customs described herein, the City of New York's police officers, including Defendant Officers, believed that their actions would not be properly monitored by supervising officers and that misconduct, including illegal strip searches and illegal body cavity searches, would not be investigated or sanctioned, but would be tolerated.

81. The policies and customs described herein demonstrate a deliberate indifference on the part of Defendant Kelly and policymakers of Defendant City of New York to the constitutional rights of persons within the City of New York, and were the cause of the violations of Plaintiff Lavi's rights alleged herein.

82. As a direct and proximate result of Defendant Kelly's and Defendant City of New York's policy of permitting and tolerating said practices, Plaintiff Lavi's rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution and his rights under 42 U.S.C. 1983 were violated.

83. Defendants City and Kelly are responsible for these violations, and are thus liable to Plaintiff Lavi for damages.

### Count Three: False Arrest, False Imprisonment, Illegal Strip Search, and Illegal Body Cavity Search

84. Plaintiff Lavi, while lawfully in New York City, was arrested without just cause, probable cause, provocation, or any valid reason by Defendant Officers, and was further detained for approximately twenty-four hours, during which he was subjected to a variety of humiliating and degrading acts, including an illegal strip search and an illegal body cavity search.

85. As a result of his false arrest, false imprisonment, illegal strip search, and illegal body cavity search, Plaintiff Lavi suffered emotional, psychological, and pecuniary damages.

86. Defendants Officers, Kelly, and City of New York are liable for said damages and injuries suffered by Plaintiff Lavi resulting from the false arrest, false imprisonment, illegal strip search, and illegal body cavity search.

**Count Four: Abuse of Process and Malicious Prosecution**

87. By instigating, ordering, validating, procuring, and assisting in Plaintiff Lavi's arrest, Defendant Officers, maliciously prosecuted Plaintiff Lavi without reasonable or probable cause and with full knowledge that the charges were false.

88. Defendant Officers used the criminal process against Plaintiff Lavi in order to intimidate him and maliciously prosecute him for a crime that never existed and was in fact dismissed by the court.

89. As a proximate result of this abuse of process and malicious prosecution, Plaintiff Lavi was compelled to hire an attorney and appear in court. As a result, he suffered economic, psychological, and emotional damages.

90. Defendant Officers, Kelly, and City are liable for said damages resulting from the abuse of process and malicious prosecution against Plaintiff Lavi.

**Count Five: Intentional Infliction of Emotional Distress**

91. Defendant Officers intentionally and recklessly engaged in extreme and outrageous conduct.

92. This conduct caused Plaintiff Lavi to suffer mental and emotional distress.

93. Defendant Officers, Kelly, and City of New York are liable to Plaintiff Lavi for mental and emotional distress.

## Prayer for Relief

94. Wherefore, Plaintiff Lavi prays that this Court:

   A. Enter a judgment that, by their actions, each of the Defendants violated Plaintiff's rights under (i) the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, (ii) 42 U.S.C. § 1983, (iii) 42 U.S.C. § 1988, (iv), 42 U.S.C. § 2000(d) et seq., (v) the New York State constitution, and (vi) New York State law; and

   B. Enter a judgment, jointly and severally, against the Defendants for compensatory damages in favor of Plaintiff in the amount of $1,000,000; and

   C. Enter a judgment, jointly and severally against each of the Defendants for punitive damages in the amount of $10,000,000; and

   D. Award costs of this action, including reasonable attorney's fees and litigation expenses, to Plaintiff pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. §1988, and New York State law; and

   E. Grant such other and further relief as the Court may deem appropriate.

## Demand for a Jury Trial

95. Plaintiff Lavi hereby demands a trial by jury.

DATED:  New York, New York
        April 19, 2006

Respectfully submitted,

By _____
Michael C. Rakower  (MR-2914)

Law Office of Michael C. Rakower
450 Lexington Avenue, 17th Floor
New York, New York  10017
(212) 350-2713

*Attorney for the Plaintiff*

15